IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MICHAEL MCADOO, | § § | MDL NO. 2543 |
| *Plaintiff*, | § | 1:14-MD-2543-JMF |
| | § | |
| v. | § | HON. JESSE M. FURMAN |
| | § | |
| GENERAL MOTORS, LLC, | § | CIVIL ACTION NO. [_____] |
| | § | |
| *Defendant.* | § | FIRST AMENDED COMPLAINT |
| | § | |
| | § | JURY TRIAL DEMANDED |

**AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Pursuant to Order No. 146 (Docket No. 5301) and Order No. 144 (Docket No. 5296), Plaintiff, Michael McAdoo (hereinafter the "Plaintiff"), through the undersigned counsel, is hereby amending his Original Complaint, originally filed on April 23, 2015 as a multiple-plaintiff complaint, ***Maresca, et al. v. General Motors, Case No. 1:15-cv-03702*** (*see* Docket No. 955), and now files his Severed and Amended Original Complaint. Plaintiff respectfully shows as follows:

**I.
INTRODUCTION**

1.   The Plaintiff's cause of action is brought against GENERAL MOTORS, LLC ("New GM" or Defendant).

2.   This action arises out of a motor vehicle incident that occurred on October 3, 2012 (the "Subject Incident"). On that date, Plaintiff was driving his 2011 Chevrolet Silverado (VIN 1GCRKREA3BZ415321) southbound on Route 17/George Washington Memorial Highway, north of Pampa Road/Route 160 at approximately 6:00 a.m. in Gloucester County, Virginia, when his vehicle lost engine power which led to a loss of electronic power steering and power brakes. Plaintiff lost the ability to effectively steer or otherwise control his vehicle, it veered off the

roadway and struck a utility pole with the front of the vehicle. Despite the severe frontal impact, the driver-side airbag did not deploy.

3.  At the time of the crash (but unbeknownst to Plaintiff), the Subject Vehicle contained a safety defect involving inadvertent ignition switch rotation causing loss of power-steering, loss of power brakes, and the disablement of the vehicle's airbag deployment capabilities. On December 30, 2014, New GM issued a safety recall for this defect under NHTSA Recall Campaign No. 14V-827, more than two years *after* Plaintiff's accident.

4.  Unlike the other Ignition Switch Defect ("ISD") recalls, the 14V-827 recall was not included in any of the "Phase" Discovery Orders in the General Motors Ignition Switch Multi-District Litigation ("MDL").[1] Indeed, many of the discovery-related Orders in the MDL were issued before the 14V-827 recall was even released,[2] or just shortly thereafter.[3] As such, in connection with his Amended Complaint, Plaintiff iterates his desire to remand this case because this recall has never been contemplated in the MDL, and thus MDL discovery on the 14V-827 defect is essentially nonexistent. In addition, or in the alternative, Plaintiff intends to take discovery on this defect and may seek leave of court to re-amend his complaint after said discovery is completed.

## II. PARTIES

5.  The Plaintiff Michael McAdoo is, and was at all times relevant hereto, a resident of Kilmarnock, Virginia.

---

[1] *See* Nov. 3, 2014 MDL Order No. 20 Regarding the Phase One Discovery Plan (Doc. 383); Jan. 14, 2015 Order No. 31 Regarding the Phase Two Discovery Plan (Doc. 526); Nov. 3, 2015 Order No. 84 Regarding the Phase Three Plan for Discovery and Motion Practice (Doc. 1596).
[2] *See*, *e.g.*, Sept. 19, 2014 MDL Order No. 14 Regarding Discovery and New GM's Proposed Gatekeeping Order (Doc. 312); Nov. 3, 2014 MDL Order No. 20 Regarding the Phase One Discovery Plan (Doc. 383); Nov. 25, 2014 MDL Order No. 26 Regarding the Production of Personnel Files by General Motors LLC (Doc. 434);
[3] *See*, *e.g.*, Jan. 14, 2015 Order No. 31 Regarding the Phase Two Discovery Plan (Doc. 526); Jan. 14, 2015 Order No. 32 Deposition Protocol Order (Doc. 529); Feb. 23, 2015 Order No. 36 Amended Deposition Protocol Order (Doc. 604).

6. The Plaintiff asserts claims against Defendant General Motors LLC for personal injuries stemming from an incident which occurred on October 3, 2012, involving the Plaintiff's 2011 Chevy Silverado.

7. The Plaintiff's personal injury claim involves a Defective Vehicle, specifically a 2011 Chevy Silverado. As used herein, the "Defective Vehicles" include vehicles subjected to NHTSA Recall No. 14V-827 involving approximately 80,000 GM vehicles that were recalled for common defects in the ignition lock actuators. The models affected by the 14V-827 Recall are: MY 2011-2012 Cadillac Escalade, Escalade ESV, Escalade EXT, Chevrolet Avalanche, Silverado HD, Silverado LD, Suburban, Tahoe, GMC Sierra LD, Sierra HD, Yukon, and Yukon XL.

8. Defendant New GM is a Delaware limited liability company. On July 10, 2009, New GM acquired substantially all of the assets and assumed product liabilities of Old GM by way of a Section 363 sale under Chapter 11 of the Bankruptcy Code. New GM assumed product liabilities of Old GM, which filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on June 1, 2009. Pursuant to the Agreement and other orders of the Bankruptcy Court, Defendant New GM purchased the assets of Old GM and hired many, if not most, of Old GM's employees including, on information and belief, most of the same senior-level management, officers, and directors. New GM also acquired Old GM's designs, tools, inventory, books, records, and its key contracts, among other essential assets.

9. Under the Purchase Agreement, New GM assumed liability for crashes after the closing date of the Purchase Agreement involving Old GM vehicles causing personal injury, loss of life, or property damages.

10. New GM also assumed product liabilities of Old GM, including certain statutory requirements:

> From and after the Closing, Purchaser [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by Seller [Old GM].

11. In addition, New GM set forth that:

> From and after the Closing, Purchaser [New GM] shall be responsible for the administration, management and payment of all Liabilities arising under (i) express written warranties of Sellers [Old GM] that are specifically identified as warranties and delivered in connection with the sale of new, certified used or pre-owned vehicles or new or remanufactured motor vehicle parts and equipment (including service parts, accessories, engines and transmissions) manufactured or sold by Sellers or Purchaser prior to or after the Closing and (ii) Lemon Laws.

12. At all times relevant to the claims in this lawsuit, New GM was in the business of developing, manufacturing, and marketing cars throughout the United States generally, and specifically in the Plaintiff's state of citizenship. New GM has a network of authorized retailers that sell its vehicles and parts throughout the United States. New GM maintains its principal place of business at 300 Renaissance Center, Detroit, Michigan

### III.
### JURISDICTION

13. This Court has diversity jurisdiction over this case under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000.00 and the Plaintiff and New GM are citizens of different states. Remand of this case would be to the United States District Court - Eastern District of Virginia, Richmond Division.

### IV.
### FACTUAL BACKGROUND

**A.    The October 30, 2012 Incident**

14. On October 30, 2012, at approximately 6:00 a.m., Plaintiff Michael McAdoo was driving his 2011 Chevy Silverado southbound on Route 17/George Washing Memorial Highway,

north of Pampa Road/Route 160 in Gloucester County, Virginia, when he lost control of his vehicle. Plaintiff's vehicle lost engine power and despite Plaintiff's best attempts, the vehicle veered off the roadway and struck a utility pole with the front of the vehicle. Upon information and belief, Plaintiff's vehicle suffered from one or more defects, which caused Plaintiff to lose control of his vehicle and resulted in the crash that is the subject of this lawsuit. The Plaintiff was severely injured when the frontal driver airbag failed deploy and the seat belt pretensioner failed to engage during the crash as they should have.

**B.    New GM Owed a Duty to Plaintiff to Ensure that his Vehicle was Safe and Defect-Free, and New GM Breached That Duty.**

15.    An automaker should never place profits above safety and should never conceal from consumers or the public any defects that exist in its vehicles. New GM's Vehicle Safety Chief, Jeff Boyer, has proclaimed that "Nothing is more important than the safety of our customers in the vehicles they drive." *GM Announces New Vehicle Safety Chief*, available at http://democrats.energycommerce.house.gov/sites/default/files/documents/Testimony-Barra-GM-Ignition-Switch-Recall-2014-4-1.pdf.

16.    Indeed, the first priority of a car manufacturer should be to ensure that its vehicles are safe and, in particular, have functioning vehicle safety systems/features that can prevent or minimize the threat of death or serious bodily harm in a collision. In addition, a car manufacturer must take all reasonable steps to ensure that once a vehicle is running, it operates safely, and its critical safety systems (such as an ignition lock actuator and airbag) work properly until such time as the driver shuts down the vehicle.

17.    To date, New GM has designed, manufactured, marketed and/or sold more than eighty-thousand cars installed with defective ignition lock actuators and/or airbag deployment system in General Motors brand vehicles.

18.     In addition, or in the alternative, New GM has sold millions of vehicles suffering from other, similar, potentially life-threatening major defects.

## C.     The Ignition Actuator Lock Recall (Recall No. 14V-827)

19.     On December 30, 2014, New GM announced a recall of 83,572 MY 2011-2012 Cadillac Escalade, Escalade ESV, Escalade EXT, Chevrolet Avalanche, Silverado HD, Silverado LD, Suburban, Tahoe, GMC Sierra LD, Sierra HD, Yukon, and Yukon XL vehicles with ignition lock actuators that may bind and cause inadvertent switch rotation due to a phenomenon referred to as ignition switch "snap-back." When ignition "snap-back" occurs, the key will "snap-back" from a non-"RUN" position on the ignition dial (e.g., from the "CRANK" position or somewhere between the "CRANK" and "RUN" positions) into the Accessory position, causing the vehicle to stall.

20.     This inadvertent key rotation not only causes sudden loss of engine power, but also disables the vehicle's power steering and power braking systems and, in the event of a crash, the safety airbags may not deploy, increasing the risk of occupant injury in crashes where airbag deployment is warranted.

21.     According to New GM's Part 573 Submission to NHTSA regarding Recall No. 14V827, the ignition lock actuator in the Defective Vehicles may have an outer diameter that exceeds specifications and could cause the key to become stuck in the "Crank" or "Start" position when the driver starts the vehicle. If stuck in the Start position or somewhere between "Start" and "Run," the key may later "snap-back" into the Accessory position if the vehicle's interior temperature sufficiently cools or the vehicle experiences a significant jarring event. This will cause a loss of engine power, disable the vehicle's power steering and power braking safety systems, and in the event of a crash, the airbags may fail to deploy when they should.

22. "Put simply, the Ignition Switch fail[s] to stay in the Run position when it should [] stay[] in the Run position."[4]

23. The phenomenon of ignition switch "snap-back" is not limited to the vehicles subject to Recall No. 14V-827, and is somewhat similar to the Ignition Switch Defect ("ISD") in that (1) it involves inadvertent ignition switch rotation while the vehicle is in motion, and (2) it stems from/is enabled by the loose detents in many of the recalled GM-brand vehicles.

**D.    New GM Designed, Manufactured, Distributed, and Sold Vehicles with a Known Safety Defect, and Then Concealed That Defect from Affected Vehicle Owners, Including Plaintiff**

24. New GM knew about the 14V-827 defect in the recalled vehicles well before Plaintiff's crash, but actively concealed said defect from Plaintiff and the public at large.

25. In 2011, New GM and ignition lock actuator supplier Nexteer twice replaced the tool that was used to make the ignition lock actuator in the Defective Vehicles because it was yielding ignition lock actuators with an outer diameter that exceeded specifications.[5] According to New GM, this out-of-specification condition would cause the ignition lock actuator in the defective vehicles to sometimes expand, particularly in higher temperatures, and cause the ignition housing to stick in the "start" position upon ignition turning/start-up. If the actuator was stuck in the "start" position, and the vehicle temperature cooled while driving, this would cause the housing the loosen, and if the driver were to go over of bump or experience some other jarring event, the spring tension from the ignition switch would cause the cylinder to "bounce-back" past the "run" position and into the "accessory" position.[6]

---

[4] Valukas Report at 29.
[5] Dec. 23, 2014, New GM Part 573 Safety Recall Report regarding NHTSA Recall No. 14V-827, at 5.
[6] *Id.* at 4.

26.    On August 29, 2012, New GM issued an internal bulletin based on two field cases from July 7, 2010, and June 22, 2012, wherein the vehicle operators experienced the defective ignition lock actuator condition, leading to unintended vehicle shut-off.[7] The bulletin was for 2010-2013 full-size trucks and SUVs and related to a vehicle stalling condition in which the ignition cylinder could get stuck in the "start" or "crank" position.[8]

27.    Notably, though, the bulletin did not contain the word "stall" in its title or description of the condition, and instead referred to the condition as "Engine Stops Running/ IPC and HVAC Turn Off With No DTCs."[9]

28.    The vehicle models that were originally subject to the August 2012 bulletin were: 2010-13 Cadillac Escalade Models; 2010-13 Chevrolet Avalanche, Silverado, Suburban, and Tahoe; 2010-13 GMC Sierra; and 2010-13 GMC Yukon Models.[10]

29.    Prior to the bulletin's issuance, on or about April 27, 2012, New GM received notice of a customer complaint from the owner of a 2011 Chevrolet Suburban who stated that his ignition switch had turned off on two different occasions while driving. The GM dealer was able to verify his concern on the first visit for this condition (April 20, 2012), and the dealer noted that, "The switch was sticking in the crank position after starting so they replaced the switch. States no the customer claims the ignition switch will physical turn backwards while driving, enough to cause the engine to stall but not all the way to the off position. . . . States customer is medium height, seat adjusted just forward of the half-way position and it is raised up slightly; states only

---

[7] *Id.* at 5.
[8] *Id.*
[9] GM-MDL2543-401533282 at -3288.
[10] *Id.*

have FOB vehicle key and another on the ring at this time. . . . Advised to drive vehicle with customer and monitor switch and conditions which induce the concern."[11]

30. New GM received notice of similar complaints through 2013-2014.[12]

31. In June 2014, New GM brand quality manager Brian D. Combs recommended that the original bulletin be reissued to add 2014 model years to the group of affected vehicles.[13]

32. It took New GM another six (6) months to finally issue the 14V-827 recall, and indeed it was issued for a narrower group of vehicles than those subject to the original 2012 bulletin.[14]

## V.
## CLAIMS AGAINST GENERAL MOTORS, LLC BROUGHT BY PLAINTIFF

**COUNT 1 - Negligence, Gross Negligence, Recklessness**

33. The Plaintiff re-alleges as if fully set forth, each and every allegation set forth herein.

34. New GM owed Plaintiff a duty to design, manufacture, fabricate, assemble, inspect, market, distribute, sell, and/or supply products in such a way as to avoid harm to persons using them such as the Plaintiff.

35. New GM owed the Plaintiff a duty to detect known safety defects in GM vehicles.

36. New GM owed the Plaintiff a duty, upon discovering the safety defect, to provide thorough notice of the defect, including a warning that the defective vehicles were not safe and should not be driven until an appropriate repair procedure was performed.

37. New GM owed the Plaintiff a duty, upon discovery of the safety defect, to ensure

---

[11] GM-MDL2543-100706969 at -6971.
[12] *Id.* at -6974-75.
[13] GM-MDL2543-401533282 at -3285.
[14] Dec. 23, 2014, New GM Part 573 Safety Recall Report regarding NHTSA Recall No. 14V-827, at 5.

that an appropriate repair procedure for the defective Ignition lock actuator was developed and made available to drivers.

38. New GM knew that their customers, such as the Plaintiff, expect that the company will employ all reasonable efforts to detect safety defects, warn drivers of their existence, and develop and make available an appropriate repair procedure.

39. The duties of New GM to discover, provide notice of, and provide repair procedures for safety related defects exist for the benefit of the Plaintiff and other drivers of GM brand vehicles, and New GM employees breached these duties to the Plaintiff. New GM was aware that by providing maintenance and repair information and assistance, including through its authorized dealerships, New GM had a responsibility to the Plaintiff and other drivers to take the reasonable measures listed above.

40. New GM breached its duties to the Plaintiff by failing to provide appropriate notice of and repair procedures for the Plaintiff's Defective Vehicle. In doing so, New GM departed from the reasonable standard of care required of it.

41. It was foreseeable that if the New GM did not provide appropriate notice and repair procedures for the Defective Vehicles, the Plaintiff and other drivers would be endangered.

42. The Plaintiff's injuries were reasonably foreseeable to New GM.

43. The Plaintiff could not through the exercise of reasonable diligence have prevented the injuries caused by New GM's negligence and gross negligence.

44. New GM's acts and omissions, when viewed objectively from the actor's standpoint, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. New GM nevertheless proceeded with conscious indifference to the rights, safety and welfare of others.

**COUNT II – Fraud by Non-Disclosure**

45.     The Plaintiff re-alleges as if fully set forth, each and every allegation set forth herein.

46.     New GM began receiving customer complaints regarding ignition lock actuator defect in certain of the Defective Vehicles as early as 2011, possibly earlier, and New GM failed to advised customers that a defect affecting motor vehicle safety existed in said vehicles until Recall 14V-827 in 2014.

47.     As set forth above, New GM intentionally concealed or failed to disclose material facts related to the ignition lock actuator defects from the Plaintiff, the public, and NHTSA.  In addition, New GM failed to timely disclose the other serious and potentially life-threatening defects in the Defective Vehicles within such time and in such manner as to prevent the Plaintiff's injuries.

48.     Additionally, New GM possessed independent knowledge of the defects in the Plaintiff's Defective Vehicles and the need to undertake multiple design steps to resolve those defects to prevent injury and economic harm to vehicle owners such as Plaintiff.  This knowledge was based, in part, on the information from records, files, reports and other documents and materials regarding the defective Ignition lock actuators.

49.     New GM had a duty to disclose the facts to the Plaintiff and New GM knew: (1) that the Plaintiff was ignorant of material facts that New GM did not disclose and/or intentionally concealed; and (2) the Plaintiff did not have an equal opportunity to discover the material facts that New GM did not disclose and/or intentionally concealed.  New GM's fraud, fraudulent concealment and fraudulent non-disclosure were all components of the subject incident of the Plaintiff.

50.     By failing to disclose these material facts, New GM intended to induce the Plaintiff

to take some action or refrain from acting.

51. The Plaintiff relied on New GM's non-disclosure and was injured as a result of acting without knowledge of the undisclosed facts. Had adequate notice and instructions been provided, Plaintiff would not have driven the Defective Vehicle, and would not have been at risk of harmful injuries described herein. The Defendant failed to provide warnings of such risks and dangers and failed to fix the defective condition in a timely manner.

### **Count III – Consumer Fraud**

52. The Plaintiff re-alleges as if fully set forth, each and every allegation set forth herein.

53. By labeling, distributing, marketing, promoting and selling the Defective Vehicles, New GM has committed acts of unfair methods of competition and unfair or deceptive trade practices or acts in the conduct of trade or commerce within the State, as prohibited by Virginia Consumer Protection Act ("CPA"), VA. Code Ann. 15§§ 59.1-196 et seq., directly, or indirectly, affecting the people of the State.

54. Defendant has repeatedly and willfully engaged in the following conduct which constitutes a deceptive trade practice and a violation of the Virginia Consumer Protection Act:

   a. Misrepresenting and concealing material facts readily ascertainable by Defendants and in Defendant's sole control; and,

   b. Misrepresenting Defective Vehicles as being of a particular standard, quality or when it is not.

55. Defendant made oral and/or written false, misleading or deceptive product labeling and/or statements for Defective Vehicles to Virginia citizens (including the Plaintiff) regarding the safety and drivability associated with using Defective Vehicles.

56. Defendant engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Defective Vehicles.

57. New GM owed the Plaintiff a duty to disclose the true safety and reliability of the Defective Vehicle and the devaluing of safety at New GM, because New GM:

    a. Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause its vehicles to be unsafe;

    b. Intentionally concealed the foregoing from the Plaintiff; and

    c. Made incomplete representations about the safety and reliability of the Defective Vehicles generally, while purposefully withholding material facts from Plaintiff that contradicted these representations.

58. By failing to disclose and actively concealing the defective conditions in the Defective GM-brand Vehicles, by marketing the Defective Vehicles as safe and reliable, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair and deceptive business practices in violation of the Virginia Consumer Protection Act.

59. New GM's unfair and deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true safety and reliability of the Defective Vehicles.

60. New GM knew or should have known that its conduct violated the Virginia CPA.

61. Defendant acted knowingly and willfully in committing the violations of the Virginia Consumer Protection Act described herein.

62. As a direct and proximate result of New GM's conduct in violation of the Virginia Consumer Protection Act, Plaintiff suffered injury in fact and/or actual damages. Plaintiff seeks actual damages in an amount to be determined at trial and/or any other just and proper relief available under the Virginia Consumer Protection Act.

**Count IV – Breach of Implied Warranty of Merchantability (VA. CODE ANN § 8.2-314)**

63. The Plaintiff re-alleges as if fully set forth, each and every allegation set forth herein.

64. New GM was a merchant with respect to Defective Vehicles within the meaning of VA. CODE ANN § 8.2-314.

65. Under VA. CODE ANN § 8.2-314, a warranty that the Defective Ignition Actuator Vehicles were in a merchantable condition was implied by law in the transactions when Plaintiff purchased the Subject Vehicle from New GM.

66. These Defective vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Vehicles are inherently defective in that there are defects in the ignition lock actuator system/components that permit the ignition switch to suddenly "snap-back" into accessory position, with the attendant shut down of power steering and power brakes and the nondeployment of airbags in the event of a collision.

67. New GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by consumers before or within a reasonable amount of time after New GM issued the recall and the

allegations of defects became public.

68.     As a direct and proximate result of New GM's breach of the implied warranty of merchantability, Plaintiff suffered injury in fact and/or actual damages. Plaintiff seeks actual damages in an amount to be determined at trial and/or any other just and proper relief available under VA. CODE ANN § 8.2-314.

### Count V – Breach of Express Warranty (VA. CODE ANN § 8.2-313)

69.     The Plaintiff re-alleges as if fully set forth, each and every allegation set forth herein.

70.     New GM, at all times relevant to this action, was engaged in the design, testing, manufacture, distribution, and sale of automobiles, including the Defective Vehicles.

71.     Defendant made oral and/or written false, misleading or deceptive product labeling and/or statements for the Subject Vehicle to the Plaintiff regarding the safety and drivability associated with using the Subject Vehicle.

72.     The Defective Vehicles were expected to and did reach users and consumers without substantial change in the condition in which they were sold.

73.     The Defendant manufactured and assembled the product which contained a defective condition because the design was defect and unsafe, creating risk of harm to a user or a consumer, including the Plaintiff.

74.     The Defective Vehicles were and are unreasonably dangerous and defective in design for their intended use and posed a risk of serious injury which could have been reduced or avoided, *inter alia*, by the adoption of a feasible reasonable alternative design. There were safer alternative designs for the like products.

75.     The Defective Vehicles' Ignition lock actuators, as designed, manufactured,

marketed, and supplied, were defective due to inadequate testing and/or poorly designed ignition lock actuator or other parts or design within the ignition switch locking mechanism unit that rendered the vehicles defective and unsafe.  Indeed, safer alternatives were available and would have been effective to ameliorate the defects that resulted in the Plaintiff's injuries.

76. The Defective Vehicles' Ignition lock actuators failed to confirm to express factual representations upon which the Plaintiff justifiably relied in electing to use the product.

77. The Subject Defective Vehicle's defects created dangerous conditions as set forth herein and proximately caused the Plaintiff's injuries.

## VI.
## DAMAGES

**78.** The Plaintiff prays for damages against the Defendant in a sum of money in excess of the jurisdictional amount of Seventy-Five Thousand Dollars ($75,000.00) plus costs and any such other relief to be deemed just and equitable to which they are entitled.

79. The Plaintiff's bodily injuries were directly and proximately caused by Defendant New GM's conduct and omissions.  Accordingly, the Plaintiff is entitled to reasonable and proper compensation for the following legal and actual damages:

    a.    past and future medical expenses;

    b.    past and future pain and suffering;

    c.    past and future disfigurement and loss of function;

    d.    prospective medical care and medication costs

    e.    past lost wages and future lost wage-earning capacity; and

    f.    property damage to her vehicle sustained in the crash.

## VII.
## PUNITIVE DAMAGES FOR INDEPENDENT CLAIMS BASED ON NEW GM'S KNOWLEDGE AND CONDUCT

80. Plaintiff re-alleges as if fully set forth, each and every allegation set forth herein.

81. Plaintiff would further show that the clear and convincing evidence in this case will prove that New GM acted with reckless disregard of the health and safety of others in that when it knew or should have known that there was the extreme risk of danger vis-a-vis the use and operation of the Defective Vehicle and other New GM vehicles with the same defect, and that New GM nevertheless proceeded with indifference to the rights, safety, or welfare of others, including Plaintiff.  Therefore, Plaintiff seeks punitive damages against New GM.

82. Alternatively, Plaintiff would further show that the clear and convincing evidence in this case will prove that New GM acted intentionally and with malice in that when it knew or should have known that there was the extreme risk of danger vis-a-vis the use and operation of Plaintiff's Defective Vehicle and other New GM vehicles with the same defect, and that New GM nevertheless proceeded with indifference to the rights, safety, or welfare of others, including the Plaintiff.  Therefore, Plaintiff seeks punitive damages against New GM.

## VIII.
## JURY DEMAND

83. The Plaintiff requests a trial by jury.

## IX.
## PRAYER

84. For the foregoing reasons, the Plaintiff prays that the Defendant be cited to appear and answer herein, and that upon final hearing of the cause, judgment be entered for the Plaintiff against Defendant for actual damages, as alleged, and exemplary damages, together with pre-judgment interested (from the date of injury through the date of judgment) at the maximum rate

allowed by law; post-judgment interest at the legal rate, costs of court; and such other and further relief to which Plaintiff may be entitled at law or in equity.

Dated: April 30, 2018                    **BAILEY PEAVY BAILEY COWAN HECKAMAN PLLC**

By: */s/ Robert Cowan*
K. Camp Bailey
Texas Bar No. 24006782
Laurence G. Tien
Texas Bar No. 24003057
Robert W. Cowan
Texas Bar No. 24031976
Justin C. Jenson
Texas Bar No. 24071095
Marathon Oil Tower
5555 San Felipe, Suite 900
Houston, Texas 77056
Telephone: (713) 425-7100
Facsimile: (713) 425-7101
bailey-svc@bpblaw.com